IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| A.S.M., *et al.*, | * |
|     Petitioners, | * |
| vs. | *   CASE NO. 7:20-CV-62 (CDL) |
| WARDEN MICHAEL DONAHUE, *et al.*, | * |
|     Respondents. | * |

O R D E R

Petitioners seek expedited discovery to support their motion for preliminary injunction. Specifically, they request that the Court permit their expert to visit the Stewart Detention Center and Irwin County Detention Center to conduct an inspection of the facilities. That inspection would include interviewing detainees, inspecting records, and viewing various areas within the facilities. For the reasons that follow, Petitioners' motion (ECF No. 32) is granted in part and denied in part.

I.   Should Discovery Be Expedited?

Petitioners allege that their constitutional rights are being violated due to the Respondents' deliberate indifference to their health and safety in light of the COVID-19 pandemic. They maintain that Respondents are incapable of protecting them from infection, and thus they seek release from custody as the only available remedy. In the alternative, they ask the Court to exercise its

1

equitable powers to assure that Respondents operate their facilities in such a manner to protect them from COVID-19 infection. Because the threat of infection is immediate and presents the potential for irreparable harm, they maintain that release and/or equitable relief should be granted now and not delayed by a normal litigation schedule.

Generally, when the determination of whether to grant preliminary injunctive relief cannot be made based upon the existing pleadings and evidentiary record, it is appropriate to permit relevant and proportional discovery to be conducted in an expedited manner. *See* Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment (explaining that expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction"). Based upon Petitioners' allegations combined with evidence submitted in the form of sworn declarations, the Court finds that Petitioners' claims are not subject to summary dismissal at this stage of the proceedings.[1] Accordingly, they are entitled to conduct discovery. Given the alleged immediate threat to Petitioners' health and safety, that discovery should be expedited. The issue is whether that discovery should include an

---

[1] Although the Court previously dismissed Petitioners' habeas corpus claims for lack of jurisdiction, *see* Order (Apr. 10, 2020), ECF No. 14, Petitioners subsequently amended their petition to include alternative claims for injunctive relief that do not restrict the remedy to the release of Petitioners from custody.

2

inspection of the Stewart and Irwin facilities, and if so, the extent of that inspection.

A party may request "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation of it."  Fed. R. Civ. P. 34(a)(2).  Any such request, however, must be limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."  Fed. R. Civ. P. 26(b)((1).

**II. Does Petitioners' Inspection Request Seek Relevant, Nonprivileged Matter?**

On its face, Petitioners' request for inspection does not seek to discover matters that would be deemed subject to a legal privilege.  To the extent that it could be so construed, privilege concerns can be addressed with an appropriate protective order.  The Court also finds that Petitioners seek information that is relevant.  To obtain the requested preliminary injunctive relief, Petitioners must ultimately show among other things that they have

3

a substantial likelihood of succeeding on the merits of their claims. Their claims allege that Respondents are deliberately indifferent to their health and safety by not properly protecting them from infection with the COVID-19 virus. They argue that this deliberate indifference violates their constitutional rights.

Respondents maintain that they have adopted policies consistent with all appropriate medical guidance on the subject, that they are effectively implementing those policies, and that their conduct is reducing the risk of the spread of COVID-19 in a reasonable and effective manner. Petitioners contest these assertions and have filed declarations contradicting Respondents' contentions. They seek to produce additional evidence to support the declarations and to show that Respondents are not effectively implementing appropriate policies and are incapable of reasonably preventing the spread of COVID-19 within these institutions. They seek to be given an opportunity to have their expert visit the institutions in person to actually see what is happening on the ground. The Court agrees that they are not simply required to take Respondents' word for it. The information Petitioners seek is relevant to their claims and to Respondents' defenses.

**III. Is the Request for Inspection Proportional?**

In addition to seeking relevant nonprivileged materials, discovery requests must be proportional to the needs of the case. No one disputes the importance of this case; nor that much of the

4

information sought is within the control of Respondents. But proportionality rests upon a determination as to whether it is necessary given any burden the requests may impose upon the responding party.

The burden of permitting an inspection is not insubstantial. At a time when these institutions should be devoting their undistracted attention to addressing the unprecedented challenges associated with COVID-19, they are faced with the possibility of allowing outsiders into their closed environment whom they must escort and appropriately monitor.  If Petitioners' expert is allowed on the premises, he will be accompanied by Petitioners' counsel. Respondents' counsel makes the reasonable request that they along with their expert be allowed to be present during the inspection as well. A language interpreter will also likely be necessary. Thus, at least five outsiders will be breaking the quarantine that Respondents are attempting to enforce. It would of course be possible presumably to protect the population within the facilities from the transmission of the virus by any of the inspection participants by requiring them to be tested prior to the inspection, but the Court is not convinced that reliable testing is available on an expedited basis for all of the participants.

Even if it could be guaranteed that the inspection participants pose no risk of transmitting COVID-19 within the

5

facilities, the inspection that Petitioners seek is expansive and will require disruption of operating procedures at a time when focus on the mission is essential to making sure the environment is safe and secure. Petitioners seek to examine most areas of the facilities, comb through facility records, and interview detainees.[2] These activities will certainly disrupt the ordinary operation of the facility and will require additional manpower and attention from a staff that is already facing unprecedented burdens and is likely strained. The Court therefore finds that the burden on Respondents of an expedited inspection is substantial and increases the COVID-19 risk to detainees and employees.

The fact that the inspection will substantially burden Respondents is not dispositive of whether the inspection should be permitted. That burden must be balanced with the need for the information by Petitioners. The Court finds that Petitioners can obtain similar discovery without inspecting the facilities in person. Given the availability of these alternative discovery

---

[2] Petitioners' request that their expert conduct confidential interviews with detainees as part of his Rule 34 inspection presents troublesome issues in addition to the disruption the process may create within the institutions. *See, e.g., Belcher v. Bassett Furniture Indus., Inc.,* 588 F.2d 904, 907 (4th Cir. 1978) (finding that the danger that "interrogation of the employees [during a Rule 34 site inspection], conducted informally" could amount to "a roving deposition, taken without notice, throughout the plants, of persons who were not sworn and whose testimony was not recorded, and without any right by the defendant to make any objection to the questions asked" outweighed the benefits). These issues can be avoided when an alternative such as depositions exist.

methods that are less burdensome and safer, the Court finds that Petitioners' request for an in-person inspection at this time is disproportionate to the needs of the case. And Petitioners' motion for inspection is denied; however, the Court authorizes the following expedited discovery:[3]

> 1) Petitioners shall be permitted to depose via telephone or videoconference up to seven detainees in each detention facility on or before May 18, 2020, and Respondents shall cooperate to make the detainees available. Each deposition shall last no longer than 30 minutes total with 20 minutes allocated to Petitioners' counsel and 10 minutes to Respondents' counsel. Counsel may modify these time limits upon agreement. Petitioners shall identify the detainees they wish to depose at least two days prior to their scheduled depositions. The depositions shall be restricted to issues regarding the conditions at the facility related to COVID-19.
>
> 2) Prior to May 18, 2020, Respondents shall arrange for a virtual tour of the facilities that will include Petitioners' and Respondents' counsel and experts. These tours shall last no longer than 3 hours at each facility. At least two days prior to the tour, Petitioners shall inform Respondents of specific areas within the facilities that they would like to be included on the tour and any tools they would like to be available to the tour guide in case measurements are requested. Respondents shall, to the extent reasonably feasible, accommodate such requests. In order to avoid security issues, Petitioners shall not make any copy of the tour. Respondents shall retain a copy of the tour and file it ex parte with the Court so that it will be accessible only to the Court and also available should a dispute arise as to what it showed.
>
> 3) By 5:00 P.M. on May 11, 2020, Petitioners shall propound a narrow request for production of documents

---

[3] If Respondents conclude that this authorized discovery is more burdensome than the inspection sought by Petitioners, then they may comply with today's order by agreeing to the inspection as requested by Petitioners.

7

specifically identifying the documents that it seeks in support of its preliminary injunctive relief. Petitioners may only seek documents documenting events occurring on or after March 1, 2020. Respondents shall produce copies of the documents within 3 days of the request.

4) A hearing shall be held telephonically on Petitioners' motion for preliminary injunctive relief at 10:00 A.M. on May 28, 2020. The Court does not contemplate the presentation of witness testimony at the hearing. Instead, the evidentiary record shall consist of declarations, depositions, expert reports, and documentary evidence which will be included with the parties' briefing.

5) Petitioners' brief in support of its motion for preliminary injunctive relief shall be filed by 5:00 P.M. on May 21, 2020. Respondents' response shall be filed by 12:00 Noon on May 27, 2020.

6) If necessary, the parties shall jointly submit a proposed protective order to the Court. If they cannot agree to the terms of the protective order, the parties shall submit a proposed protective order that clearly designates the items to which they agree and disagree.

7) The parties may by agreement modify the compliance dates set forth in this order without obtaining permission from the Court, except the briefing schedule shall not be altered.

IT IS SO ORDERED, this 7th day of May, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
